682 So.2d 1126 (1996)
Gabriel ALBELO and Patricia Albelo, his wife, Appellants,
v.
SOUTHERN BELL k/n/a Bell South Telecommunications, Inc. and Emerald Village Professional Plaza Company, Inc., Appellees.
No. 95-1798.
District Court of Appeal of Florida, Fourth District.
October 9, 1996.
Rehearing and Rehearing Denied November 25, 1996.
*1127 David A. Hoines of Hoines and Rose, Fort Lauderdale, for appellants.
John R. Hargrove of Heinrich Gordon Hargrove Weihe & James, P.A., Fort Lauderdale, for Appellee-Bell South Telecommunications, Inc.
Rehearing and Rehearing En Banc Denied November 25, 1996.
BAKER, MOSES, Jr., Associate Judge.
Appellants, Gabriel and Patricia Albelo, plaintiffs below, appeal a final summary judgment in favor of Appellee, Southern Bell k/n/a Bell South Telecommunications, Inc. (Southern Bell). We reverse because the record demonstrates the existence of genuine issues of material fact as to whether Southern Bell, its agents or employees, created the condition which caused the personal injuries sustained by Appellant, Gabriel Albelo.
The record demonstrates that Appellant Gabriel Albelo was employed by Industrial Waste Service as a refuse collector. His regular route included the Emerald Village Professional Plaza where he collected refuse from two dumpsters three times each week. The dumpsters were located in an alleyway near the plaza. On the morning of May 3, 1989, at approximately 9:30 a.m., when he arrived at the entrance to the alleyway, he found it blocked by three Southern Bell vehicles which he described as being two vans and a big truck. He also saw several Southern Bell employees walking around in the area of the alleyway and upon conversing with them, he was told by them that he could not make his pickup because they were working in the alley. Since he could not access the area where the dumpsters were located, he left the area and continued with the remainder of his route.
The record further demonstrates that Mr. Albelo returned to the area that same day at approximately 2:30 p.m. at which time he found the entrance to the alleyway and access to the dumpsters no longer blocked. Moreover, he found no Southern Bell vehicles or employees in the area. Therefore, he proceeded to collect the refuse from the two dumpsters. As Mr. Albelo was rolling one of the dumpsters toward the rear of his vehicle, the wheels of the dumpster rolled into an uncovered trench which had been cut through the pavement. This caused the wheels of the dumpster to come to a sudden and abrupt stop which in turn caused Mr. Albelo to slip and the dumpster to fall pinning him underneath it. He sustained injuries to his knee and shoulder. The record reflects that the trench in question contained cable which was the property of Southern Bell.
Appellants sued Southern Bell and in their second amended complaint alleged that Southern Bell was negligent initially in creating the trench and then leaving it in an uncovered and unpatched condition. They alleged further that Southern Bell was negligent in failing to barricade the trench or to warn Mr. Albelo of its existence. More importantly, *1128 they alleged that Mr. Albelo's personal injuries were caused "solely and wholly" by the negligence of Southern Bell, its agents or employees. In support of their allegations, Appellants presented, inter alia, the following deposition testimony of Mr. Albelo:
Q. Tell me what happened when you got there?
A. I got there and the Southern Bell truck was there working, so I left. It's an alley, so they were blocking it; nothing I could do. I called dispatch and told them it's blocked; I can't get in there. So I went to do the rest of my route.
Q. How many Southern Bell trucks were there when you first got there at 9:00, 9:30 that morning, more than one?
A. I can't remember, I saw three trucks. I'm not sure.
Q. You think you saw three but you're not sure?
A. It could be more.
Q. It certainly was more than one though?
A. More than one. They had the big truck; that I can remember, then the little trucks they had.
Q. That was my next question. What type of Southern Bell trucks were they? Were they vans
A. I can remember two vans and a big truck, but I don't know if there were more or not because they was working. I seen the whole alley was blocked, so I left.
Q. When you saw the Southern Bell trucks, did you see any actual workers for Southern Bell doing anything in the alleyway?
A. I seen the guys walking around. I didn't pay attention.
* * * * * *
Q. That why I asked you earlier, sir, when you initially went to the site in the early morning hours on May 3, 1989, when the Southern Bell trucks were parked and blocking your way what precluded you from going to the other gated enclosure to dump that dumpster?
A. Boththe alley was blocked from here to here (indicating). I couldn't get in.
Q. What you're telling me is the alley was
A. They had the whole thing blocked. See, the alley comes from here (indicating). You drive up and come up to the street over here (indicating). The whole thing was blocked.
* * * * * *
Q. Do you know who created that condition or how it was created?
A. I figured it was the people who were working there.
Q. Did anyone tell you that Southern Bell or someone else created that condition as it's depicted in photographs 1G and 1F.
A. No, I didn't ask nobody. I seen them working there. They had all that stuff they carry with them. I figured it was them.
Q. Do you know what Southern Bell was doing when you got there early that morning at 9:00, 9:30?
A. No. I don't know what they were doing.
Q. Did you get out of the truck to see at 9:00 or 9:30 what they were doing?
A. I got out of the truck; I asked the guy; he said I can't pick up now because they're working there, so I left.
Q. When you got out of your truck to speak with the Southern Bell person, did you walk to that condition?
A. No. I didn't walk. I just walked where he was standing in the truck drinking coffee.
Q. Did you see what type of equipment they had outside their trucks?
A. All I can see is a big truck with a trailer on it and the regular trucks they got.
* * * * * *
Q. Do you know where exactly the Southern Bell employees were working on the day of the accident?
A. I didn't seen them working. I seen the equipment there and I seen the guys standing around when I got out of the *1129 truck to talk to the guy drinking coffee. They say they're going to work. They have that blocked for a while.
Southern Bell moved for summary judgment, primarily asserting that it did not perform any work on the date of the incident in the area where Mr. Albelo was injured. The motion for final summary judgment specifically states, inter alia, "it is undisputed that Bell South did not perform any work at the location where plaintiff alleges to have been injured." Additionally, in its motion for final summary judgment, Southern Bell claimed that its general contractor, Church & Tower, performed the work as an independent contractor. In support of its motion, Southern Bell presented, inter alia, the testimony of its employee, Mr. Poston, who testified that no Southern Bell employees performed any work or were present at the scene where Mr. Albelo was injured on May 3, 1989. The relevant portions of his deposition testimony are as follows:
Q. Okay. This incident apparently happened on May 4th or 5th, right in that area of 1989. Can you tell what Southern Bell Employees or personnel were on the scene during that period?
A. Okay, at this location there would have been no Southern Bell employees. This would have beenour contractor, Church And Tower, would have had the responsibility of burying this cable and digging the trench, and doing the final restoration.
The principles which govern the use of summary judgment are well settled. First, summary judgment cannot be granted unless the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, conclusively show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fla. R. Civ. P. 1.510(c). Second, the burden is upon the party moving for summary judgment to show conclusively the complete absence of any genuine issue of material fact. Third, the trial court must draw every possible inference in favor of the party against whom summary judgment is sought. Moore v. Morris, 475 So.2d 666 (Fla.1985). Fourth, if the evidence raises any issues of material fact, or if it is conflicting, or if it will permit different reasonable inferences, or if it tends to prove the issues, summary judgment cannot be granted. McDonald v. Florida Dep't of Transp., 655 So.2d 1164 (Fla. 4th DCA 1995).
The principles which govern the use of summary judgment further mandate that if the record demonstrates the possibility of an issue of fact, or if the record raises even the slightest doubt as to the existence of an issue of fact, then that doubt must be resolved against the moving party and the remedy of summary judgment is not available. Tretten v. Irrgang, 654 So.2d 1297 (Fla. 4th DCA 1995).
Furthermore, even where the facts are uncontroverted, the remedy of summary judgment is not available if different inferences can be reasonably drawn from the uncontroverted facts. Pan Am. Distrib. Co. v. Sav-A-Stop, Inc., 124 So.2d 753 (Fla. 1st DCA 1960). In short, summary judgment may not be used as a substitute for a trial on the merits; therefore, it follows that a trial court may not resolve disputed issues of fact when considering a motion for summary judgment. To do so would simply deprive the litigants of their constitutional right to a trial on the merits and would violate the basic principles of law which govern the use of summary judgment. Smith v. City of Daytona Beach, 121 So.2d 440 (Fla. 1st DCA 1960).
Measured against these well-settled principles of summary judgment jurisprudence, we conclude that the trial court erred in entering summary final judgment against Appellants because Southern Bell failed to sustain its burden of conclusively demonstrating the complete absence of a genuine issue of material fact. We readily perceived from the record a genuine issue of material fact as to whether Southern Bell, its agents or employees, created the dangerous condition which allegedly caused Appellants' damages. To reach this conclusion, we need only compare and contrast the previously cited testimony of Mr. Albelo and Mr. Poston. Mr. Albelo testified that when he arrived at *1130 the location in question, he found the entry to the alleyway blocked by Southern Bell's employees. He testified further that he actually saw and conversed with those employees, who advised him that they were working in the area. The record also demonstrates that the trench in question contained Southern Bell's buried cable. In direct contradiction, Mr. Poston testified that none of Southern Bell's employees were present at the location where this incident took place. It is clear that the trial court resolved this disputed issue of fact in Appellee's favor in entering the summary final judgment below. The resolution of disputed issues of fact is prohibited by the principles which govern the use of summary judgment. Therefore, we must reverse.
We acknowledge that the record demonstrates that Mr. Albelo never saw Southern Bell's employees actually digging the trench in question. Despite this acknowledgement, we are compelled to reverse because we are obligated to draw every possible inference from the evidence in favor of Appellants. More importantly, if the evidence will permit different reasonable inferences, or if it tends to prove the issues, the evidence should be submitted to the jury as a question of fact to be determined by the jury. In short, we readily conclude that the evidence in the instant case will permit different reasonable inferences, one of which certainly tends to prove that Southern Bell, its agents or employees, is solely and wholly responsible for the damages sustained by Appellants. Accordingly, Southern Bell has failed to meet its burden and therefore we must reverse the final summary judgment entered below.
In view of our disposition of this case, we need not reach Appellants' alternative arguments nor any of the remaining issues raised in this appeal, as their consideration at this time is premature. Whether the independent contractor rule bars Appellants' recovery will become an issue only if and when the fact-finder determines that the allegedly dangerous condition was created by Southern Bell's independent contractor. Accordingly, we reverse the trial court's entry of summary final judgment on behalf of Southern Bell and remand for further proceedings.
REVERSED AND REMANDED.
GUNTHER, C.J. and STEVENSON, J., concur.