745 So.2d 545 (1999)
John D. CORBITT, JR., M.D., John D. Corbitt, JR., M.D., P.A., Palm Beach Surgical Associates, Inc., and Donald Friedman, as Personal Representative of the Estate of Bertram Friedman, decedent, Appellants,
v.
Genevieve KURUVILLA, M.D., Norman C. Sudduth, M.D., P.A., and JFK Medical Center, Appellees.
Nos. 98-4220, 98-4222.
District Court of Appeal of Florida, Fourth District.
December 8, 1999.
*546 Janis Brustares Keyser of Gay, Ramsey & Warren, P.A., West Palm Beach, for Appellants-John D. Corbitt, Jr., M.D. and John D. Corbitt, Jr., P.A. and Palm Beach Surgical Associates, Inc.
Julie Braman Kane of Colson, Hicks, Eidson, Colson, Matthews, Martinez & Mendoza, P.A., Miami, for Appellant-Donald Friedman, as Personal Representative of the Estate of Bertram Friedman.
Barbara W. Sonneborn and Jeffrey R. Rollins of Sonneborn Rutter Cooney Klingensmith & Eyler, P.A., West Palm Beach, for Appellees-Genevieve Kuruvilla, M.D. and Norman C. Sudduth, M.D., P.A.
Philip D. Parrish of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for Appellee-JFK Medical Center.
PER CURIAM.
Appellants, John D. Corbitt, M.D. and Donald Friedman, as Personal Representative of the Estate of Bertram Friedman, appeal from two final orders granting summary judgment in favor of three co-defendants, Genevieve Kuruvilla, M.D., Norman C. Sudduth, M.D., P.A. and JFK Medical Center, arguing that genuine issues of material fact exist.
Dr. Corbitt performed gall bladder removal surgery on Bertram Friedman. During the operation Dr. Corbitt noticed that the gall bladder had a strange appearance and submitted a frozen section to be examined by the JFK Medical Center Pathology Department. Before the operation was complete, Dr. Sudduth, from pathology, informed Dr. Corbitt that the frozen section revealed that the patient had a small cell malignancy and that further stain testing would need to be performed in order to classify the tumor. Dr. Kuruvilla, an independent contractor, was to conduct the stain testing and produce a report. Because Dr. Corbitt was unsure whether Friedman had cancer, he decided not to inform him until he received the results of the stain testing. He never received the results.
Approximately one year later Friedman was experiencing pain and discomfort and as a result consulted with a physician who determined that he had metastic cancer of the liver. The physician then sought Friedman's pathology report from JFK. However, the report was missing. Upon learning that there was no pathology report in the file, Dr. Corbitt questioned Dr. Sudduth who indicated that the initial report had not been generated due to computer problems. That report was then printed and placed in the file but stated only that the tissue sample revealed a malignancy and noted that further stain testing would be conducted. Although deposition *547 testimony suggested that the stain testing was completed, no addendum to the report was ever filed or disseminated to Dr. Corbitt. Dr. Sudduth believed that the addendum was filed based on an entry in the tumor registry which classified the malignancy as cancerous, but was lost due to computer problems at JFK.
Friedman immediately began treatment for cancer, but died soon thereafter. His estate filed a medical malpractice action against Dr. Corbitt, Dr. Kuruvilla, Dr. Sudduth and JFK Medical Center. Dr. Corbitt admitted liability, but asserted that Dr. Kuruvilla, Dr. Sudduth and JFK Medical Center contributed to his negligence by failing to properly complete and/or file a final pathology report. JFK and Dr. Kuruvilla moved for summary judgment alleging that Dr. Corbitt failed to notify the patient of the first test and could have had access to the report regarding the frozen section through JFK's computer system. Dr. Sudduth moved for summary judgment based on the fact that Dr. Kuruvilla was an independent contractor, for whom he had no vicarious liability. The trial court granted all the motions. We reverse as to Dr. Kuruvilla and JFK, but affirm as to Dr. Sudduth.
In seeking summary judgment the moving party bears the burden to "show conclusively the absence of any genuine issue of material fact." Gonzalez v. B & B Cash Grocery Stores, Inc., 692 So.2d 297, 299 (Fla. 4th DCA 1997) (quoting Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985)). The appellate court in reviewing a motion for summary judgment "must draw every possible inference in favor of the party against whom a summary judgment is sought." Moore, 475 So.2d at 668 (citations omitted).
With regard to Dr. Kuruvilla there are several disputed issues of material fact regarding her contribution to Dr. Corbitt's negligence. First, it is disputed whether the addendum report was ever completed. An addendum report was not contained in the hospital's files nor on its computer. The only evidence that the addendum was filed is the fact that the tumor registry stated that the patient's tumor was classified as carcinoma. Thus, to find that the addendum report was completed requires an inference based on the notation contained in the registry. In addition, a JFK employee testified that it was the pathologist's duty to ensure that the treating physician received the report. As a result, more than one inference must be drawn from the facts. The existence of a reasonable inference contrary to that asserted by the non-moving party should not result in the entry of summary judgment, but rather should be left to the jury to determine whether a preponderance of the evidence supports the inferences suggested by the moving party. See Gonzalez, 692 So.2d at 299.
Dr. Kuruvilla also argues that even if the report was not filed, it did not contribute to Dr. Corbitt's failure to notify his patient. However, this suggestion is contrary to Dr. Corbitt's statement during his deposition that he does not normally notify patients of a tumor until he receives classification. Finally, there is also an issue of fact as to whether the addendum report would have served as a reminder to Dr. Corbitt to inform the patient of his condition.
Genuine issues of material fact also preclude entering summary judgment in favor of JFK. There was conflicting testimony as to whether it was JFK's responsibility to forward pathology reports to treating physicians. In addition, Dr. Sudduth alleged that JFK had problems with its computers, which could have resulted in the addendum report being lost.
As to Dr. Sudduth, his professional association was sued under a theory of vicarious liability based on Dr. Kuruvilla's negligence. However, Dr. Sudduth provided uncontradicted evidence that Dr. Kuruvilla was an independent contractor. As this court has previously stated:

*548 [a] movant for summary judgment has the initial burden of demonstrating the nonexistence of any genuine issue of material fact. But once he tenders competent evidence to support his motion, the opposing party must come forward with counter-evidence sufficient to reveal a genuine issue. It is not enough for the opposing party merely to assert that an issue does exist.
Buitrago v. Rohr, 672 So.2d 646, 648 (Fla. 4th DCA 1996) (quoting Landers v. Milton, 370 So.2d 368, 370 (Fla.1979)). Therefore, once Dr. Sudduth established a lack of an issue of fact relating to Dr. Kuruvilla's employment status it was Dr. Corbitt's burden to provide contrary evidence. Since the evidence provided as to this issue was uncontroverted and cannot lead to a different inference, the professional association was properly granted summary judgment, as no genuine material fact existed. See Albelo v. Southern Bell, 682 So.2d 1126, 1129 (Fla. 4th DCA 1996) (where facts are uncontroverted the remedy is summary judgment provided those facts are not subject to a reasonable contrary inference).
Affirmed in part; reversed in part, and remanded for further proceedings.
WARNER, C.J., DELL and TAYLOR, JJ., concur.