965 So.2d 1268 (2007)
Allan and Claire SHERES, Appellants,
v.
Richard and Carla GENENDER, Woodfield Country Club Homeowner's Association, Inc., The Enclave at Woodfield Country Club, Inc., Mario and Delia Marun, Greenberg Traurig, P.A., Ruden McClosky, Smith, Shuster & Russell, P.A., Nestler-Poletto Realty, Inc., and Lorenzo and Jane Bernal, Appellees.
No. 4D06-3363.
District Court of Appeal of Florida, Fourth District.
October 10, 2007.
Howard D. DuBosar of DuBosar & Perez, P.A., Boca Raton, for appellants.
Allison Grant and Andrew M. Dector of Shapiro, Blasi, Wasserman & Gora, P.A., Boca Raton, and Bruce S. Rogow and Cynthia E. Gunther of Bruce S. Rogow, P.A., Fort Lauderdale, for appellees Richard and Carla Genender.
Thomas A. Groendyke of Douberley & Cicero, Sunrise, for appellee The Enclave at Woodfield Country Club, Inc.
Robert Rivas and James Bruce Culpepper of Sachs & Sax, Tallahassee, for appellee Woodfield Country Club Homeowner's Association, Inc.
L. Louis Mracheck and Alan B. Rose of Page, Mracheck, Fitzgerald & Rose, P.A., West Palm Beach, for appellee Greenberg Traurig, P.A.
No brief filed for appellees Nestler-Poletto Realty, Inc., and Lorenzo and Jane Bernal.
No appearance for appellees Mario and Delia Marun and Ruden McClosky, Smith, Shuster & Russell, P.A.
STEVENSON, J.
The appellants, Allan and Claire Sheres (the Shereses), and two appellees, Woodfield Country Club Homeowner's Association, Inc. (Woodfield HOA), and The Enclave at Woodfield Country Club, Inc. (Enclave HOA), allege the trial court *1270 erred (1) in granting the appellees, Richard and Carla Genender (the Genenders), partial final summary judgment on their amended counterclaims and final summary judgment as to the Shereses' amended complaint and (2) in granting summary judgment in favor of Greenberg Traurig, P.A. The Shereses also appeal the trial court's denial of their motion for summary judgment. Because the rules of appellate procedure do not permit appeals of orders denying motions for summary judgment, we lack jurisdiction to consider the merits of the Shereses' appeal of that order. However, for the reasons set forth below, we reverse the orders granting summary judgment and partial final summary judgment.
These appeals stem from the 1999 lawsuit between the Genenders, Pinetree Homes, Bruce and Sharon Pearl, who previously owned the Shereses' house, the Kolter Corporation, the Woodfield HOA, and the Enclave HOA. The Genenders' complaint contended that the Woodfield Country Club Master Plan and the plat for the Enclave subdivision required the homes within the Enclave to be zero lot line single family homes. As such, Pinetree Homes, the builder of the Shereses' house, was required to construct that house with a windowless sidewall directly adjacent to the property line. In contravention of those requirements, the Woodfield HOA, the Enclave HOA, the Woodfield Country Club's Design Review Board, and the Kolter Corporation, who is the developer of Woodfield Country Club, permitted Pinetree Homes to construct the Shereses' house approximately three and a half feet from the zero lot line property line with an alcove that contained windows.
In an attempt to resolve their dispute, the Genenders entered into a settlement agreement with the Pearls, the Pearls' successor in interest  the Maruns  the Woodfield HOA, the Enclave HOA, and the Kolter Corporation. Some provisions of the settlement agreement required the construction of a privacy wall, the Maruns ensuring that any lights on their property facing the Genenders' property would contain motion detectors, the Maruns lowering a light fixture in the alcove wall to a specific location, and the Maruns paying for the removal of hedges from their yard that impeded the Genenders' view. The settlement agreement also provided that the Maruns would execute and record the Declaration of Covenants and Easement Agreement (the declaration). According to the settlement agreement, the declaration would require the Maruns to be financially responsible for "construct[ing], maintain[ing], repair[ing], reconstruct[ing] and insur[ing] the Privacy Wall." Additionally, the declaration would prohibit the Maruns from adding windows or changing glass block to clear glass on the side of the Maruns' house facing the Genenders' lot.
The settlement agreement provided that the Maruns were financially responsible for the privacy wall and that
[N]either the Homeowners Association nor the Enclave Homeowners Association shall be responsible for maintaining, repairing, replacing, improving or insuring the Privacy Wall or for the costs associated with such items. . . . Further, the Enclave Homeowners Association's execution of this Settlement Agreement or its non-objection to the Privacy Wall . . . shall not create, whether express or implied, any duty or obligation on the part of the Enclave Homeowners Association to maintain, repair, replace, improve or insure the Privacy Wall. . . .
Unlike the settlement agreement, which was entered into by all of the parties to the litigation, the declaration specified it was only "made and entered into" by the *1271 Maruns and the Genenders. In consideration of the sum of ten dollars and other "valuable consideration," the Maruns and Genenders agreed that the Maruns, "its successors and assigns" would be financially obligated to construct, maintain, repair, reconstruct, and replace the wall. In exchange, the Maruns would have an easement on the Genender parcel for the purpose of fulfilling those obligations, which were deemed to be covenants running with the land. The owner of the Genender parcel was the only entity named in the declaration as having the right to seek an injunction to prevent or rectify violations committed by any owner or occupant of the Marun parcel. However, the declaration could be modified if the owners of the two properties provided written consent.
The Shereses purchased the home from the Maruns in 2003. Despite the Maruns' attorney at Greenberg Traurig stating that she would record the declaration, it is undisputed that the declaration was not recorded before the Shereses purchased the house. The Shereses contend they were first informed about the unrecorded restrictions after the closing occurred and the Genenders objected to the Shereses' request to remove the alcove wall. Shortly thereafter, the Genenders' attorney informed the Shereses that removing the alcove wall would violate the settlement agreement and the declaration. In light of what transpired, the Shereses sought a declaratory judgment that they were not bound by either the declaration or the settlement agreement. The Shereses also requested that the trial court enjoin the Genenders and the associations from using either document to impede the removal of the Shereses' alcove wall. The Genenders responded by filing counterclaims against the Shereses and claims against the Maruns, the Enclave HOA, the Enclave HOA's individual board members, Ruden McClosky, Woodfield Country Club, and Greenberg Traurig.
The Genenders moved for a partial final summary judgment on their amended counterclaims and final summary judgment as to the Shereses' amended complaint. According to the Genenders, the Shereses had express, implied, and inquiry notice as to the existence of the restrictive covenants prior to purchasing the house. The Shereses were also required to comply with the settlement agreement and declaration because they were members of the Woodfield Country Club and Enclave HOA. Furthermore, even if the Shereses were not bound by either the settlement agreement or the declaration, the Woodfield Country Club and the Enclave HOA could not allow the Shereses to remove the alcove wall or the privacy wall.
When granting the Genenders' motion for partial final summary judgment and final summary judgment, the trial court held that the Shereses had actual and inquiry notice of the existence of the property's restrictive covenants. In Sapp v. Warner, 105 Fla. 245, 141 So. 124 (1932), the supreme court instructed that there are two types of actual notice. Express actual notice, "which includes what might be called direct information," and implied actual notice, which is notice that is "inferred from the fact that the person had means of knowledge, which it was his duty to use and which he did not use." Id. at 127. Implied actual notice is based upon the principle
that a person has no right to shut his eyes or ears to avoid information, and then say that he has no notice; that it will not suffice the law to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on *1272 inquiry, when the means of knowledge is at hand.
Id.
On appeal, the parties do not dispute that there is a material question of fact concerning express actual notice since the Shereses have denied that anyone ever told them about the restrictions or the declaration, or showed them any written evidence of the same. Therefore, we first turn to the trial court's conclusion that the Shereses had implied actual notice because of Claire Sheres's proficiency as a real estate agent at the time of her deposition, Sheres's testimony that she viewed the privacy wall before purchasing the house, her acknowledgment that the privacy wall was large, the privacy wall's visibility from locations on and off the property, and the Shereses' previous residence at the Woodfield Country Club before purchasing their home in the Enclave subdivision.
Claire Sheres testified that, for numerous years before she moved to the Enclave subdivision, she lived in other subdivisions within the Woodfield Country Club. In 2002, approximately one year before the closing occurred, Sheres acquired her real estate license. Between the time period that she acquired her license and purchased the house in question, she had never shown a property in the Enclave subdivision or been involved in any real estate transactions involving that subdivision. By the time of her 2005 deposition, Sheres had learned that the phrase "zero lot line" means different things in different communities. For instance, in some communities, zero lot line homes have no walls without windows. At the time of her deposition, she also believed that, even though she did not know every house in the Woodfield Country Club, she was familiar with the residential subdivisions. When discussing her house in the Enclave subdivision, Sheres explained that she went to the house approximately two times before the closing occurred. On at least one of those visits, she observed the large privacy wall, which was unique to the Enclave subdivision, but similar to walls contained in the Clubside subdivision.
We agree with the Shereses that the trial court erred by relying on Claire Sheres's status in 2005 as a successful real estate agent when determining that she should have asked if any contracts or restrictive covenants existed before she purchased the house in 2003. In our view, whether Sheres's experience as a real estate agent in 2003 should have caused her to ask about the existence of restrictive covenants is a material question of fact for the jury. Moreover, even if a jury was to decide that viewing a large wall gave Sheres notice of that structure's restrictions, we cannot conclude that viewing the privacy wall would also have provided implied actual notice of restrictions pertaining to the alcove wall, the placement or style of lights, landscaping, wind chimes, or the inability to construct a dog run in a certain location. Whereas the Genenders' failed to show the absence of any material questions of fact regarding implied actual notice, the trial court erred when relying on that doctrine to grant summary judgment. See Albelo v. S. Bell, 682 So.2d 1126, 1129 (Fla. 4th DCA 1996) ("[T]he burden is upon the party moving for summary judgment to show conclusively the complete absence of any genuine issue of material fact.").
As to the trial court's determination that the Shereses had inquiry notice, the Florida Supreme Court has commented that "[i]n order to charge a person with notice of a fact which he might have learned by inquiry, the circumstances known to him must be such as should reasonably suggest inquiry and lead him to inquiry." Chatlos v. McPherson, 95 So.2d 506, 509 (Fla. *1273 1957). For instance, in Citgo Petroleum Corp. v. Florida East Coast Railway Co., 706 So.2d 383 (Fla. 4th DCA 1998), the Florida East Coast Railway Company (FEC) had inquiry notice of Citgo Petroleum Corporation's easement because FEC observed the pipeline's construction. Here, Claire Sheres merely saw a large privacy wall in between her property and that of the Genenders. Viewing this wall would not have put Sheres on inquiry notice of restrictions that do not concern the wall, and whether her observation of the wall placed her on inquiry notice of the wall's immutable character is a question of fact for a jury to decide.
Our review of the documents received by the Shereses leads us to conclude that they also presented a jury question. For instance, the Shereses rely on the Affidavit of No Lien, which stated "[t]here are no unrecorded easements on the Property," and on Nestler-Poletto's Seller's Property Disclosure, which stated the property had no "restrictions affecting additions, improvements or replacement of the property." But, as pointed out by the Genenders, the Statutory Seller's Disclosure Summary informed the Shereses that "there have been or will be recorded restrictive covenants governing the use and occupancy of properties in this community." The Florida Supreme Court has held that "[i]f the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it." Moore v. Morris, 475 So.2d 666, 668 (Fla.1985). Because the documents provided the Shereses with seemingly contradictory information, the trial court erred by granting summary judgment on this issue.
Similar to arguments advanced by the Genenders, Greenberg Traurig claimed it was entitled to summary judgment because the associations, who were parties to the settlement agreement and declaration, could not allow the Shereses to remove the wall. Plus, the City of Boca Raton allegedly will not permit the Shereses to remove the alcove wall. The trial court concluded in the order on Greenberg Traurig's motion for summary judgment that the settlement agreement "include[d] the terms of the Declaration" and required the associations to deny the Shereses' request to alter the walls. An almost identical conclusion was reached when the trial court determined in the order on the Genenders' motion that "as parties to the Agreement and Declaration (also by virtue of their execution of the Agreement together with the merger clause therein), Woodfield CC and Enclave are legally bound by and obligated to enforce those restrictive covenants."
Although we believe that the trial court correctly determined that the settlement agreement incorporates the declaration, those documents do not support the trial court's conclusion, in granting Greenberg Traurig's motion for summary judgment, that "the Sheres[es] may not state a cause of action or a claim for damages related to the Sheres[es]' inability to remove or alter the Alcove Wall or the Privacy Wall, when the Sheres[es] could not, as a matter of law obtain the required consent of the HOAs to remove or alter the Walls." First, even if the associations are prohibited from granting a request to remove the walls, we do not agree that this fact alone eliminates all potential damages to the Shereses as a result of the law firm's failure to record the declaration. Second, a determination that the associations could not, as a matter of law, consent to the removal or alteration of the walls, is premature on this record. Last, we note that the record, as it exists on the summary judgment motions herein, does not support *1274 the trial judge's determination that the associations are "legally bound . . . to enforce [the declaration's] restrictive covenants."
Based on the foregoing, we reverse the orders granting the Genenders' motion for partial final summary judgment and summary judgment and Greenberg Traurig's motion for summary judgment, and we remand for further proceedings.
Reversed and Remanded.
SHAHOOD, C.J., and BELANGER, ROBERT E., Associate Judge, concur.