WARNER, J.
 

 A landowner appeals a summary judgment in favor of Palm Beach County declaring that the Right to Farm Act did not preempt the County’s enforcement of ordinances enacted prior to its passage. The court also determined that the special permitting requirements of county ordinances were not covered by the Act, because they did not limit farming operations. Finally, the court determined that the County enacted its development code pursuant to its home rule powers as much as Chapter 163, and therefore it had the power to regulate agricultural uses pursuant to its home rule powers even though Chapter 163 excluded agricultural uses from its terms. Because the Right to Farm Act does not prohibit enforcement of ordinances in existence at the time of the adoption of the Act, we affirm in part the declaratory judgment. We reverse, however, as to the court’s conclusion that the special permit conditions and setbacks did not limit farming operations, as genuine issues of material fact remain. We affirm the determination that the county ordinances are not preempted by the exclusion of agricultural uses from section 163.3164, Florida Statutes.
 

 Plaintiffs/appellants, Richard Wilson, and his two business entities, Plant Explorers, LLC, and Excalibur Fruit Trees, LLC, own and operate a nursery on several parcels of land located in unincorporated Palm Beach County. The land is located in an agricultural-residential zoning district. Wilson has owned most of the land for over twenty years, but he purchased one of the parcels in 2005. Wilson has obtained a Grower’s Certificate and a State Nursery Inspection License for his operations.
 

 In September 2007, a neighbor of the nursery complained to Palm Beach County about burning activities on Wilson’s property. Due to the complaint, an agent of the County conducted a site visit to the property. Although the County agent found no violation in connection with the burning, the County issued a Notice of Violation, indicating that Wilson was in violation of the Unified Land Development Code (“ULDC”) because he was “operating a wholesale or retail nursery without the proper zoning approval” and was maintaining landscaping materials, equipment, and vegetation debris without zoning approval. The County threatened to shut his business down unless he complied. Wilson advised the County that he would comply with its demands “under protest.” Throughout the dispute, Wilson maintained that his activities were protected by the Florida Right to Farm Act.
 

 In July 2008, Plant Explorers, LLC, filed a special permit application for the 2005 parcel. The County issued a “Special Permit” which allowed the operation of the business on the 2005 parcel if certain conditions were met. The conditions required the business to comply with specific portions of the ULDC, including, among other provisions: 1) mandatory set-back provisions for outdoor storage areas, structures,
 
 *1249
 
 and plants in containers; 2) a prohibition of the operation of commercial vehicles from 7:00 p.m. to 6:00 a.m.; and 3) a requirement of a buffer adjacent to all parking, loading, and internal roads.
 
 [1]
 
 However, no general condition in the Special Permit required the nursery to comply with the ULDC as a whole.
 

 In response to the County’s demand of the permits and conditions, the plaintiffs filed a verified complaint against the County seeking declaratory and injunctive relief on the grounds that: 1) the special permit conditions violated Florida’s Right to Farm Act, and 2) the plaintiffs’ activities were farming operations which did not constitute “development” for the purposes of the ULDC and its enabling legislation. The County answered, denying that Wilson was a “farmer” and denying that the plaintiffs were engaged in farming operations.
 

 The County filed a motion for summary judgment, arguing that: 1) the Right to Farm Act restricts only new ordinances, not the enforcement of pre-existing ordinances; 2) the County’s zoning permit regulations regarding nurseries are not governed by the Right to Farm Act because they are not intended to limit farming operations; and 3) restrictions on the term “development” under Chapters 163 and 380, Florida Statutes, did not prohibit the County’s ordinances, which were authorized under more general grants of constitutional and statutory authority.
 

 The trial court held a hearing on the summary judgment motion and ultimately entered final summary judgment in favor of the County. The trial court first concluded that the Right to Farm Act’s prohibition against the adoption of any local ordinances that restrict farm activity on agricultural land would not affect the enforcement of pre-existing' ordinances, but would only “limit adoption of new ordinances from the date the Legislature first prohibited such adoption, which occurred on June 16, 2000.” The trial court noted that the requirement for wholesale nurseries to obtain a special permit was modified in 2002 and, therefore, the current iteration of the requirement did not pre-date the Right to Farm Act’s prohibition against the adoption of new ordinances. However, the court concluded that neither the procedural requirement of obtaining a special permit nor the setback and other permit conditions were regulations “to prohibit, restrict, regulate, or otherwise limit an activity of a bona fide farm operation” in contravention of the statute. Finally, the court concluded that Palm Beach County had the authority as a charter county to enforce the provisions of its ULDC on farming activities, notwithstanding the limited definition of “development” in Chapter 163, Florida Statutes. Accordingly, the trial court entered final summary judgment in the County’s favor, prompting this appeal.
 

 Section 823.14(6), Florida Statutes, provides in relevant part:
 

 It is the intent of the Legislature to eliminate duplication of regulatory authority over farm operations as ex
 
 *1250
 
 pressed in this subsection. Except as otherwise provided for in this section and s. 487.051(2), and notwithstanding any other provision of law, a local government may not adopt any ordinance, regulation, rule, or policy to prohibit, restrict, regulate, or otherwise limit an activity of a bona fide farm operation on land classified as agricultural land pursuant to s. 193.461, where such activity is regulated through implemented best management practices or interim measures developed by the Department of Environmental Protection, the Department of Agriculture and Consumer Services, or water management districts and adopted under chapter 120 as part of a statewide or regional program.
 

 This subsection of the Right to Farm Act became effective on June 16, 2000.
 
 See
 
 Laws of Fla., Ch. 2000-308, § 39.
 

 Courts must determine legislative intent primarily from the language of the statute.
 
 See Golf Channel v. Jenkins,
 
 752 So.2d 561, 564 (Fla.2000). “When a statute is clear and unambiguous, courts will not look behind the statute’s plain language for legislative intent or resort to rules of statutory construction to ascertain intent.”
 
 Lee Cnty. Elec. Co-op., Inc. v. Jacobs,
 
 820 So.2d 297, 303 (Fla.2002). The statute’s plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent.
 
 Daniels v. Fla. Dep’t of Health,
 
 898 So.2d 61, 64 (Fla.2005).
 

 Applying those principles, in
 
 J-II Investments, Inc. v. Leon County,
 
 908 So.2d 1140 (Fla. 1st DCA 2005), the First District considered identical language in section 163.3162, the Agricultural Lands and Practices Act (ALPA), and held that the statute’s prohibition on counties
 
 adopting
 
 ordinances relating to agriculture did not prevent the enforcement of provisions already in place. The court explained:
 

 The plain, unambiguous terms of section 163.3162(4), Florida Statutes, prevent counties from
 
 adopting
 
 ordinances relating to agriculture. The statute does not address the enforcement of provisions already in place. If the legislature intended to include the term “enforce” in the statute, it clearly could have done so.
 
 See, e.g.,
 
 § 403.7603, Fla. Stat. (2004) (“... no county or municipality shall adopt
 
 or enforce
 
 regulations that discriminate against privately owned solid waste management facilities ... ”) (emphasis added); § 163.3174(6), Fla. Stat. (2004) (“If a joint planning entity is in existence on the effective date of this act which authorizes the governing bodies to adopt
 
 and enforce
 
 a land use plan effective throughout the joint planning area ....”) (emphasis added). Thus, since the legislature did not include the word “enforce” in section 163.3162(4), Florida Statutes, we cannot assume that they intended to preempt all existing county regulations.
 

 Id.
 
 at 1141 (citation omitted). Because the operative language of the ALPA is identical to the language in the Right to Farm Act, the same analysis applies, and the Right to Farm Act does not prohibit the enforcement of county ordinances enacted prior to the Act’s effective date. Palm Beach County’s ULDC was enacted in 1989. The Right to Farm Act provisions restricting local government from adopting ordinances restricting farming activities did not become effective until June 16, 2000. Furthermore, the set-back provisions, the non-conforming use requirements, and the zoning provisions for wholesale nurseries have existed within the ULDC since before June 16, 2000.
 

 Appellants claim
 
 J-II’s
 
 analysis is inconsistent with the first sentence of the statute declaring the legislative intent to eliminate duplication of regulatory authority
 
 *1251
 
 over fanning operations. We disagree. The first sentence states: “It is the intent of the Legislature to eliminate duplication of regulatory authority over farm operations
 
 as expressed in this subsection.”
 
 § 823.14(6), Fla. Stat. (emphasis supplied). What is expressed in the subsection is a prohibition on the adoption of further regulations. It does not prevent the enforcement of currently existing regulations. The trial court correctly declared that enforcement of the County’s ordinances enacted prior to 2000 is not prohibited by the Right to Farm Act.
 

 One of the ordinances that the County sought to enforce, however, was adopted after the enactment of the Right to Farm Act. The ordinance pertaining to special permits for nurseries of less than five acres was enacted in 2002. Thus, appellants argue that the trial court erred in concluding that only certain types of zoning regulations are preempted, and it also erred in concluding that the zoning regulations on which the County’s special permit was conditioned do not impact the appellants’ farming operations. The County maintains that its requirement that appellants apply for and receive a special permit is merely a procedural requirement, although the permit imposes setbacks and other conditions. Whether these special permit conditions were all requirements in the code prior to the adoption of the Right to Farm Act is also unclear in the record.
 

 The trial court relied on two Attorney General opinions in concluding that the enforcement of setback requirements would not impact farming operations. In 2001, the Florida Attorney General’s Office issued an opinion regarding whether a county may require a zoning compliance permit under its land development regulations for nonresidential farm buildings.
 
 See
 
 Op. Att’y Gen. Fla.2001-71 (2001). The opinion recognized that the Right to Farm Act prohibited local governments from adopting ordinances interfering with farm operations. The Attorney General concluded: “It would
 
 appear
 
 that a setback requirement would not necessarily limit a farm’s operation and would, therefore, apply to such construction.” (emphasis added). No facts in the opinion support this conclusion.
 

 In 2009, the Florida Attorney General reaffirmed the opinion that a county has the authority to enforce its zoning regulations regarding the construction of a building on land classified as agricultural, if those regulations do not limit the operational activity of the bona fide farm operation.
 
 See
 
 Op. Att’y Gen. Fla.2009-26 (2009). However, in that case, the issue presented was the application of setback requirements to a building which could not be classified as a farm building but was more of a guest house on the property.
 

 Nothing in the record supports the trial court’s conclusion that the conditions of
 
 this
 
 permit, including the setback requirements, would not interfere with farming operations. Other conditions of the permit require buffers adjacent to all parking, loading, and internal roads. Some conditions limit the hours of operation of large commercial vehicles. We have no way of knowing how these requirements impact the wholesale nursery operations on the property. We do not think it is authorized or appropriate for us to take the Attorney General’s statement that it
 
 appears
 
 that setback requirements would not impact farming operations as an adjudicated fact. While the actual application for a permit may be a procedural step which does not limit farming operations, the same cannot be said for the conditions on the permit which may require substantial modification of operations.
 

 
 *1252
 
 Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fla. R. Civ. P. 1.510(c). “[T]he burden is upon the party moving for summary judgment to show conclusively the complete absence of any genuine issue of material fact.”
 
 Albelo v. S. Bell,
 
 682 So.2d 1126, 1129 (Fla. 4th DCA 1996). The record does not show that there are no genuine issues of material fact remaining. The County did not carry its burden, because it offered no proof that its permit conditions did not impact farming operations.
 

 Finally, we affirm the trial court’s conclusion that Chapter 163’s definition of development, which excludes the use of land for agricultural purposes, does not preempt all local government regulation of agricultural uses. Section 163.3164(6) defines “development” by referencing section 380.04, which defines the term as “the carrying out of any building activity or mining operation, the making of any material change in the use or appearance of any structure or land, or the dividing of land into three or more parcels.” § 380.04(1), Fla. Stat. However, section 380.04 also excludes various operations which do not involve “development” as defined in the statute, including “[t]he use of any land for the purpose of growing plants, crops, trees, and other agricultural or forestry products; raising livestock; or for other agricultural purposes.” § 380.04(3)(e), Fla. Stat. If agricultural uses are excluded, then the terms of section 163.3164, et seq., would not apply to them, because they do not constitute “development.” Other statutes may restrict agricultural land uses.
 
 See, e.g.,
 
 § 823.14(6), Fla. Stat. (The Right to Farm Act); § 604.50, Fla. Stat. (nonresidential farm buildings are exempt from the Florida Building Code and any county or municipal building code); § 163.3162, Fla. Stat. (Agricultural Lands and Practices Act). But agricultural use is not within the definition of development and governed by Chapter 163.3164.
 

 In this case, the authority for the ULDC is not based exclusively on Chapter 163, but is also based upon the constitutional home-rule powers as well as the general authority granted under Chapter 125, Florida Statutes. The County has the authority pursuant to those grants of power to regulate the lands within its county to the extent that the regulation does not conflict with other statutes governing agricultural uses. Because the County has that authority, we agree with the trial court that Chapter 163 does not preempt the regulation in this case.
 

 Affirmed in part, reversed in part, and remanded.
 

 STEVENSON and TAYLOR, JJ„ concur.
 

 [1]
 

 . The entire list of conditions set forth in the special permit is as follows: 1) provide proof that a viable wholesale nursery had been established on the property within six months of the special permit issuance; 2) limit operation of commercial vehicles over 1 ton or 10,000 pounds capacity from 7:00 p.m. to 6:00 a.m.; 3) maintain a 15 foot right-of-way buffer adjacent to office, parking, load, internal roads, and other non-growing areas within 50 feet of a right-of-way; 4) maintain a buffer along all property lines not screened by plant material; 5) maintain a 50 foot set-back for structures, greenhouses and outdoor areas; 6) maintain a 15 foot set-back for container plants; and 7) maintain a set-back for outdoor bulk storage of 50 feet or the district set-back, whichever is greater.