WARNER, J.
 

 Appellant, the Florida Department of Health, timely appeals a final summary judgment declaring that the appellees, Dr. Allan Dinnerstein and his professional association, were entitled to sovereign immunity — under a volunteer health care contract and in accordance with the Access to Health Care Act — for causes of action alleged in a related medical malpractice case. The Department claims that the court erred in granting summary judgment because genuine issues of material fact remain. We agree and reverse.
 

 In 2005, Dr. Allen Dinnerstein, M.D., through his corresponding professional association, entered into a contract with the defendant, the Florida Department of Health, whereby he agreed to participate in Florida’s Volunteer Healthcare Provider Program. The Legislature enacted this program in section 766.1115, Florida Statutes, to improve the access of indigent residents to health care by offering health care- providers immunity from suit for their agreement to offer free health care to indigent residents.
 
 See
 
 § 766.1115(2), Fla. Stat. (2005). A volunteer provider may not be named as a defendant in any malpractice action where the care is performed under the health care provider’s
 
 *27
 
 contract with the Department. § 766.1115(4), Fla. Stat. (2005).
 

 The statute mandates that “[pjatient se- ■ lection and initial referral must be made solely by the governmental contractor, and the provider must accept all referred patients.” § 766.1115(4)(d), Fla. Stat. (2005). “If emergency care is required, the patient need not be referred before receiving treatment, but must be referred within 48 hours after treatment is commenced or within 48 hours after the patient has the mental capacity to consent to treatment, whichever occurs later.” § 766.1115(4)(e), Fla. Stat. (2005). The Department’s standard contract, signed by Dr. Dinnerstein, contains language based on the statutory language of section 766.1115(4)(e). It requires that a designated agent of the Department must make the referral pursuant to Patient Referral Form, DH 1032, and the health care provider must obtain the approval of the Department prior to delivery of services. Consistent with the statute, the contract included the statutory language regarding emergency treatment.
 

 The Patient Referral Form, DH 1032, informs the patient that the services of the volunteer health care professional are being provided at no charge and that the state is solely liable for any injuries and damages with its liability being limited by sovereign immunity. The patient must sign the form agreeing to the referral.
 

 Diane Carlson, a nurse employed with the Palm Beach County Health Department, was in charge of the Volunteer Health Care Provider Program. Ms. Carlson testified that when Dr. Dinnerstein signed the contract, he was in private practice. However, Dr. Dinnerstein called Ms. Carlson, informing her that he was going to start working at Bethesda Memorial Hospital and that he was going to draw down on his private practice. Dr. Dinnerstein said that he no longer wanted to accept patients from the network. Nonetheless, Dr. Dinnerstein never withdrew from the network and his volunteer contract was still in effect in March 2007.
 

 In 2007, Ludana Prophete was a patient receiving prenatal care at the Lanta-na clinic of the Palm Beach County Health Department, a designated agency for the Department. On March 5, 2007, Ms. Prophete arrived by ambulance at Bethesda Memorial Hospital in Palm Beach County, complaining of abdominal pain. This appears to be a self-referral and not one made by the clinic. Dr. Din-nerstein has not claimed that he is covered by immunity for his treatment of Ms. Prophete on this date. A nurse made a diagnosis that Ms. Prophete had potential preeclampsia. Dr. Dinnerstein was the physician on call at Bethesda, and he initially saw Ms. Prophete and rendered some treatment. Upon discharge, Ms. Prophete was instructed to return if she experienced other problems. She was also told to keep her next appointment with the Lantana clinic.
 

 On March 8, 2007, Ms. Prophete went to the Lantana clinic for her appointment, where she was seen by a nurse, Sandra Smith. Based upon her examination and Ms. Prophete’s complaints, Smith believed that Ms. Prophete was suffering from preeclampsia, which required immediate delivery. Smith called the Labor and Delivery Unit at Bethesda and notified the clerk of Ms. Prophet’s situation. Smith then arranged for an ambulance to take Ms. Prophete to Bethesda, because that is where the clinic routinely sends its patients requiring hospitalization. On a prescription pad which Smith gave to the paramedics, Smith noted Ms. Prophete’s vital signs as well as her symptoms. Smith did not know which physician was on duty, nor did she speak to any doctor regarding Ms. Prophete. She has no re
 
 *28
 
 sponsibility for referring patients to doctors pursuant to the volunteer health program.
 

 Dr. Dinnerstein saw Ms. Prophete at Bethesda on March 8th, where her blood pressure was elevated. He gave her two prescriptions and told her to return the next day to get her blood pressure checked. She returned on March 9th, and Dr. Dinnerstein again examined her and released her, this time instructing her to return in two days to have her blood pressure checked. Unfortunately, Ms. Proph-ete died two hours after leaving the hospital. Dr. Dinnerstein never billed for his services, although Bethesda did generate a bill, which was later written off as uncol-lectable.
 

 The personal representative of Ms. Prophete’s estate brought a medical malpractice action against Dr. Dinnerstein and Bethesda Memorial. The Department took the position that Dr. Dinnerstein was not entitled to sovereign immunity pursuant to the contract and section 766.1115 for any medical services rendered to Ms. Prophete and therefore refused to defend.
 

 Dr. Dinnerstein then filed this declaratory judgment seeking to establish his immunity from suit pursuant to his contract and the Volunteer Health Care Provider Program. In his suit, he contended that Ms. Prophete had been referred to his care by the clinic in compliance with the terms of his contract. He relied on nurse Smith’s note given to the paramedics as the referral and demanded the immunity from suit promised by his contract. In his later-filed motion for summary judgment, he argued that the Department referred Ms. Prophete to Bethesda Memorial Hospital on an emergency basis on March 8, 2007, and that upon receiving Nurse Smith’s prescription pad notes, Dr. Din-nerstein began treatment. Dr. Dinner-stein further argued that he was under no duty to determine the patient’s eligibility for the program, that he provided health care services to the patient at no charge, and that the forty-eight hour emergency provision of the contract applied.
 

 The Department opposed summary judgment, contending that Ms. Prophete had not been referred to Dr. Dinnerstein as part of the Volunteer program. The Department argued that Nurse Smith’s notes did not constitute a referral, and in any event Ms. Prophete was not referred to any particular physician at Bethesda. Assuming that Ms. Prophete did present as an emergency case, pursuant to the statute and the terms of the contract, a written referral had to be generated within forty-eight hours after treatment commenced. This was not done, although Dr. Dinnerstein argued that Ms. Prophete died before the expiration of the forty-eight hours and thus could not consent to the referral.
 

 The trial court granted summary judgment. In the order granting summary judgment, the trial court found that the obstetrical services performed by Dr. Din-nerstein on March 8th and 9th, 2007, were rendered in accordance with the Volunteer Health Care Provider Agreement. The trial court further held:
 

 While it is also undisputed that the patient’s eligibility for the program was found to be lacking and that the notice of referral form, DH # 1032, was never executed and sent to the Plaintiffs, the contract provides that
 
 the necessity of having a predetermination of eligibility and the attendant execution of the referral form are dispensed with when the transfer of the patient is made during a declared medical emergency of the patient as was the case herein.
 

 Accordingly, the trial court entered a final declaratory judgment in the plaintiffs’ favor, declaring that sovereign immunity
 
 *29
 
 was afforded under the contract and in accordance with section 766.1115, Florida Statutes, to Dr. Dinnerstein and all health care providers under his control for the causes of action in the malpractice lawsuit filed by the estate of Ms. Prophete. From this order, the Department appeals.
 

 We review an order granting summary judgment
 
 de novo. Fla. Atl. Univ. Bd. of Trs. v. Lindsey,
 
 50 So.3d 1205, 1206 (Fla. 4th DCA 2010). When reviewing an order granting summary judgment, an appellate court must examine the record in the light most favorable to the non-moving party.
 
 Allenby & Assocs., Inc. v. Crown St. Vincent Ltd.,
 
 8 So.3d 1211,1213 (Fla. 4th DCA 2009). “[T]he burden is upon the party moving for summary judgment to show conclusively the complete absence of any genuine issue of material fact.”
 
 Albelo v. S. Bell,
 
 682 So.2d 1126, 1129 (Fla. 4th DCA 1996). “A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law.”
 
 Moore v. Morris,
 
 475 So.2d 666, 668 (Fla.1985).
 

 The facts in this case are disputed. First, the evidence is conflicting as to whether a referral was made to Dr. Din-nerstein through the Volunteer Health Care Program, whether be it by way of emergency or by the normal referral process. Dr. Dinnerstein had already told the volunteer program coordinator that he did not intend to take further volunteer patients, because he was commencing work at Bethesda Hospital. On March 5th, Dr. Dinnerstein treated Ms. Prophete in an emergency capacity at the hospital, where she appeared on her own as a “self-referral.” That he treated her without referral by the Volunteer program in this instance is evidence that he was not acting within the course and scope of his Volunteer Health Care Provider contract in his work at Bethesda. When Nurse Smith sent Ms. Prophete to Bethesda on March 8th, she did not send her to Dr. Dinnerstein specifically but to any physician on call. Therefore, it is a question of fact as to whether he was acting in his capacity as a volunteer physician when treating Ms. Prophete at Bethesda.
 

 While it is undisputed that a referral was not made pursuant to the required Patient Referral Form DH 1032, the trial court found that this was excused by the emergency treatment provision in the contract. That is, no referral form is necessary prior to treatment in emergency cases, but the referral must be made within forty-eight hours of treatment commencing or within forty-eight hours of the patient having the mental capacity to consent to treatment. Contrary to the trial court’s interpretation of the contract, however, the requirement of the referral is not completely “dispensed with” when the treatment is given during a declared medical emergency of the patient. Instead, as a general proposition, the referral requirement is merely delayed.
 

 Under the contract, if the patient had the mental capacity to consent to treatment, the fact that the patient died within the forty-eight hour period from the commencement of treatment would not excuse the lack of a referral. If Ms. Prophete did have the mental capacity to consent, then the requirement of executing the referral form is crucial, because it informs the patient that sovereign immunity would be extended to the health care provider and she would be waiving her right to a full recovery in tort for any medical negligence. It is also mandated by statute.
 

 Here, it is clear that no referral was executed within forty-eight hours after treatment was commenced on March 8th. Thus, the emergency provision could apply only if a referral was obtained “within 48 hours after the patient has the mental
 
 *30
 
 capacity to consent to treatment.” If Ms. Prophete had the mental capacity to consent to the terms of treatment in the volunteer network, either on March 8th or March 9th, then the referral requirement was not “dispensed with.” Here, as the Department argues, Ms. Prophete was
 
 discharged
 
 from Bethesda Memorial Hospital on both March 8th and March 9th, suggesting that she would have had the mental capacity to consent to treatment. The fact that Dr. Dinnerstein discharged her two days in a row cuts against his argument below that there was no opportunity for Ms. Prophete to sign the referral form and thus consent to her treatment by him as a volunteer physician. At the very least, it is clear that Dr. Dinnerstein was not entitled to summary judgment, as he did not prove that Ms. Prophete lacked the mental capacity to consent to treatment.
 

 Because disputed issues of fact remain, the trial court erred in granting summary judgment. We therefore reverse and remand for further proceedings.
 

 HAZOURI, J., and MONACO, TOBY S., Associate Judge, concur.