DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PETER TOROCSIK,**
Appellant,

v.

**HSBC BANK USA, NATIONAL ASSOCIATION,** a Nationally Associated
Corporation; and **MATTHEW WEAVER,** an individual,
Appellees.

No. 4D13-2569

[May 27, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm
Beach County; Howard Harrison, Senior Judge; L.T. Case No.
502011CA006974XXXXMB.

Peter Torocsik, West Palm Beach, pro se.

George G. Kurschner of Karyo & Kurschner, P.A., Boca Raton, for
appellee Matthew Weaver.

Daniel J. Barsky of Shutts & Bowen, LLP, West Palm Beach, for
appellee HSBC Bank USA, N.A.

CIKLIN, J.

Peter Torocsik appeals the order denying his motion for summary
judgment and entering summary judgment for HSBC, et al. ("the Bank"),
on Torocsik's suit for damages related to a dishonored cashier's check.
We reverse.

In 2008, Torocsik was the seller of his restaurant and entered into a
stock purchase agreement contract with Matthew Weaver and Yanni
Agelopoulos, the buyers of the restaurant. The contract provided that at
the closing, Torocsik ("the seller") was to provide specified corporate
documents to Weaver and Agelopoulos ("the buyers") and that the buyers
were to make various payments toward a total purchase price of
$100,000. The contract provided for a closing date of May 27, 2008, and
the closing was to take place in the office of the buyers' attorney. The

closing was made contingent on "the parties['] approval of employment contracts . . . and the Purchasers and Sellers agreeing upon the terms of an operating agreement." The closing never took place although at least one payment of $30,000 was made by one of the buyers to the seller.

Subsequent to the failed closing date, the seller brought suit against the Bank, seeking money damages for wrongful dishonor of the subject cashier's check. The seller alleged as follows. Pursuant to the contract, one of the buyers, Weaver, agreed to partially pay the seller $30,000. The Bank issued a cashier's check to Weaver (with the seller as payee), in the amount of $30,000 which was voluntarily delivered to the seller on May 19, 2008. That day, the seller deposited the check into his Wachovia bank account. On May 20, Weaver executed an affidavit which identified the cashier's check he had delivered to the seller as "stolen." With that information, the Bank then demanded Wachovia return the funds. That same day, Wachovia froze the seller's account after withdrawing the $30,000 that the seller had deposited the day before. The Bank informed the seller that it had stopped payment based on "the stolen check affidavit" from Weaver. The affidavit stated that the Bank issued the buyer a U.S. Dollar Draft in the amount of $30,000, payable to the seller, and that the check was "stolen." Weaver did not elaborate on the details of the alleged theft.

As a defense to the seller's suit, the Bank asserted in its answer that Weaver tendered the check as a good-faith deposit and that the sale of the business was never consummated.

The seller and the Bank filed cross-motions for summary judgment. The Bank argued summary judgment was required because the seller had no right to retain the $30,000 payment. In support of its motion, the Bank submitted portions of transcripts of the seller's deposition testimony. In the depositions, the seller testified that after the subject $30,000 cashier's check was delivered to him, the buyers asked the seller to return the money after the buyers spoke to restaurant employees, who "scared [the buyers] away" by telling them that the restaurant was not profitable. The seller informed the buyers that the check was already deposited. The seller additionally informed the buyers that he would not return the money because the buyers refused to return corporate papers he had given to them in return for their check.

The trial court denied the seller's motion for summary judgment but granted summary judgment in favor of the Bank. In ruling for the Bank, the trial court found that under the unambiguous terms of the contract, the seller was not entitled to cash the check when he deposited it in his

Wachovia account. The court also found that the Bank was permitted to refuse payment because the check was stolen.

The standard of review is de novo. *Chhabra v. Morales*, 906 So. 2d 1261, 1262 (Fla. 4th DCA 2005) (citation omitted). To the extent the seller challenges the court's denial of his motion for summary judgment, this court has no jurisdiction to review such an order, even where a final summary judgment for the opposing party has been entered. *See Sheres v. Genender*, 965 So. 2d 1268, 1270 (Fla. 4th DCA 2007) (recognizing that rules of appellate procedure do not provide for appeal of an order *denying* a motion for summary judgment, but do permit jurisdiction over appeal of portion of the order *granting* summary judgment and entering partial summary judgment). As such, this opinion is limited to the portion of the order entering summary judgment for the Bank.

The seller's action for damages against the Bank was based on section 673.4111, Florida Statutes (2008), which provides in pertinent part:

(1) In this section, the term "obligated bank" means:

(a) The acceptor of a certified check; or

(b) The issuer of a cashier's check or teller's check bought from the issuer.

(2) If the obligated bank wrongfully refuses to pay a cashier's check or certified check, wrongfully stops payment of a teller's check, or wrongfully refuses to pay a dishonored teller's check, the person asserting the right to enforce the check is entitled to compensation for expenses and loss of interest resulting from the nonpayment and may recover consequential damages if the obligated bank refuses to pay after receiving notice of particular circumstances giving rise to the damages.

(3) Expenses or consequential damages under subsection (2) are not recoverable if the refusal of the obligated bank to pay occurs because:

(a) The bank suspends payments;

3

(b) The obligated bank asserts a claim or defense of the bank that it has reasonable grounds to believe is available against the person entitled to enforce the instrument;

(c) The obligated bank has a reasonable doubt whether the person demanding payment is the person entitled to enforce the instrument; or

(d) Payment is prohibited by law.

In concluding that summary judgment for the Bank was warranted, the trial court relied in part on *Warren Fin., Inc. v. Barnett Bank of Jacksonville, N.A.*, 552 So. 2d 194 (Fla. 1989). However, application of the holding of that case to the facts of this case is a non-sequitur; it does not support summary judgment for the Bank.

*Warren* involved a financing agreement. Redan, the named payee on a cashier's check, endorsed it over to Warren, a party with whom it had entered into a financing agreement. After Warren deposited the check, it failed to follow through on an alleged agreement to advance funds to Redan. Redan then persuaded the purchaser of the check to request the issuing bank to stop payment based on fraud. After the bank complied, Warren sued the bank for wrongfully dishonoring the check.

On appeal, the Florida Supreme Court held that the issuing bank wrongfully dishonored the check under these circumstances. *Id.* at 201. In response to a question certified to it by the district court, the supreme court held that an obligated bank may raise limited defenses when it dishonors a cashier's check:

> [W]e hold that upon presentment for payment by a holder, a bank may only assert its real and personal defenses in order to refuse payment on a cashier's check issued by the bank. It may not, however, rely on a third party's defenses to refuse payment. The only inquiry a bank may make upon presentment of a cashier's check is whether or not the payee or endorsee is in fact a legitimate holder, i.e., whether the cashier's check is being presented by a thief or one who simply found a lost check, or whether the check has been materially altered.

*Id.* at 201 (footnote omitted).

4

The Florida Supreme Court rejected the argument that an obligated bank should be able to rely on a third party's claim to the cashier's check:

> We disagree . . . for several reasons. Banks should not be placed in a position that requires them to determine the respective rights of parties to a cashier's check prior to paying the holder of the check. The actual dispute in this case pertains to the underlying transaction between Redan and Warren, i.e., whether Warren defrauded Redan into transferring the cashier's checks to Warren. The issuance of a cashier's check is a distinct and separate transaction from that underlying dispute. Comment 5 to section 3-306 [of the Uniform Commercial Code] addresses this point and states in part:
>
>> The contract of the obligor is to pay the holder of the instrument, and the claims of other persons against the holder are generally not his concern. He is not required to set up such a claim as a defense, since he usually will have no satisfactory evidence of his own on the issue; and the provision that he may not do so is intended as much for his protection as for that of the holder . . . . The provision includes all claims for rescission of a negotiation, whether based on incapacity, *fraud*, duress, mistake, illegality, breach of trust or duty or any other reason.

*Id.* at 198-99.

Here, the trial court erroneously interpreted *Warren* as allowing the Bank to stop payment based on a *third party's defense* of theft. This was error for two reasons.

First, the trial court's finding of theft was not supported by the summary judgment submissions. The trial court found that the seller's action of depositing the check (nine days) before the closing date amounted to conversion because the contract called for payment literally to be made on May 27: "The Contract is clear and unambiguous and confirms that [the seller] was not entitled to negotiate or cash the Check when he deposited it in his Wachovia bank account. . . . In depositing and cashing the check before he was entitled to do so under the Contract, [the seller] converted and stole the Check." In point of fact, the contract said nothing about what the seller was permitted to do with the

cashier's check. The contract provided only that the buyers were to pay the seller by cashier's check in the total amount of $60,000 on the closing date of May 27, 2008. The contract did not address the scenario where, as here, one of the buyers provided the seller with a check in advance of the closing date. Additionally, Weaver's affidavit did not explain the circumstances surrounding the alleged theft of the check. The record established that Weaver did, in fact, intend to deliver the $30,000 check to the seller. The record also reflects that the buyers wanted to back out of the contract after speaking to restaurant employees.

Second, the Bank dishonored the check based on a barebones claim of Weaver that the $30,000 cashier's check had been stolen, even though it was made payable to the seller and deposited into his account. Under these circumstances, while the unadorned claim in the affidavit alleging a theft may have supplied the Bank with grounds to conduct an inquiry, it did not permit it to prevent payment to the seller of the restaurant. Again, as stated by the Florida Supreme Court in *Warren*, the Bank's issuance of the cashier's check was a distinct and separate transaction from the contract for sale and purchase of the restaurant. Essentially, the Bank dishonored the check based on a defense available only to the purchaser of the check, Weaver, rather than on the Bank's own defenses to the claim of wrongful dishonor of the cashier's check. *Warren* makes it clear that this is not permitted. *See id.* at 201 (holding that an obligated bank may not rely on third party's defenses in dishonoring a check). For the foregoing reasons, we reverse.

*Reversed and remanded for further proceedings.*

STEVENSON and TAYLOR, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***

6